CITY OF UNIVERSITY HEIGHTS *v.* SEIBERT.

(No. UH 70-228—Decided January 23, 1971.)

Shaker Heights Municipal Court.

*Mr. Lawrence Corman*, city prosecutor, for plaintiff.
*Messrs. Gold, Rotatori, Messerman & Hanna,* and *Mr. Robert Rotatori*, for defendant.

ROCKER, J. Defendant asks this court to suppress evidence upon which the city of University Heights ordered the arrest and prosecution of defendant for violation of R. C. 3719.09, which regulates possession of narcotics; more particularly in the instant case, possession of marijuana.

The fact situation upon which the motion to suppress is offered is substantially as follows:

Defendant was the lessee of a bedroom in a home owned by a resident of University Heights, such home being located near a local university campus. The landlady had agreed to rent the room to defendant, who was a student at the university and stipulated conditions of his occupancy such as that he must clean his own room, that fresh sheets would be placed on the bed for him each week, that he could have access to other areas of the house and he could come and go as he pleased.

On the day in question, the landlady noticed a peculiar odor of something burning and upon investigation found that the odor was coming from defendant's room. She knocked on his door and inquired as to whether something was burning in his room and he replied in the negative.

A short time later, after defendant had left to attend classes, the landlady, still concerned with the strange odor and after having searched other portions of premises with no success, entered defendant's bedroom and discovered that the odor was, indeed, coming from that room. She narrowed down the precise source of the odor to a dresser drawer and upon opening same she found a box which contained bottles of a substance that she suspected was causing the odor when used in connection with ciga-

rette papers, a cigarette-making machine and a small pipe.

Upon suspicion that the substance she discovered might be marijuana, she summoned the police of University Heights. An officer appeared, asked her to bring the suspected materials to him and he felt satisfied that the substance shown to him was marijuana. He returned later that day and arrested the defendant. No search warrant was obtained by the officer and it is essentially on this basis that the motion to suppress is made.

The court will promptly dispose of the question of the failure of the police officer to obtain a search warrant before returning to the "boarding house" to arrest the defendant. It is the opinion of the court that the legality of the search hinges on the circumstances of the original search by the owner of the premises and, therefore, had the officer obtained a search warrant, it is well-settled law in Ohio that such a search warrant would not cure a previous illegal search, if such there was.

There is no question in the court's mind that rented premises come within the protective rights of the Fourth Amendment and the court further bears in mind the holdings in *Chapman* v. *United States,* 332 F 2d 892 (1964) and *Stoner* v. *California,* 376 U. S. 483, as well as numerous other cases which have held, and correctly so, that the lessor, hotel manager, and others not occupants of the leased quarters may not waive the constitutional rights of the tenant.

Under ordinary circumstances, the landlady in the instant case could not consent to a search of her tenant's bedroom; the question faced here, however, is under what circumstances may she conduct such a search,

This court held in *University Heights* v. *Conley,* 252 N. E. 2d 199 (1969), a shop-lifting case, that the Fourth Amendment did not preclude private persons, as against government officials, from executing a search and seizure without obtaining a search warrant, providing such search and seizure was not done in concert with or under the direction of a police officer or other governmental officer.

It was the opinion of the court in that case that the owner of a business establishment had the right to use rea-

sonable means of effecting a search and seizure without a search warrant for the purpose of protecting his property. The reasoning of *Burdeau* v. *McDowell*, 256 U. S. 465, was followed in that opinion since in that case, such as in the instant one, the search and seizure was not made at the direction of, and in fact, without the knowledge of any police or governmental official.

In the case at hand, the landlady and owner of the premises, using her very words: "* * * I smelled some-thing burning," would cause this court to make a most unreasonable construction of the Fourth Amendment to hold that a landlord, hotel manager or any other owner or controller of premises would be required to obtain a search warrant in order to enter a rented room from which smoke was emanating, distinguishable from the ordinary smoke odors created by tobacco smoke, or burning toast and the like.

Hotel fires, for example, are frequently found to have resulted from persons negligently smoking in bed. Prompt entry by a manager or chamber maid with a passkey has in some instances spared the life of the room's occupant as well as the lives of others in the building. This court is of the opinion that under such circumstances where entry to the room is made for a legitimate purpose, the discovery therein of a criminal act should not be impervious to prosecution of the offender due to the lack of a search warrant. This would clearly carry interpretation of the Fourth Amendment to the point of absurdity.

In the case at hand, the landlady, acting on her own initiative, suspecting that something was burning which might affect her property, entered defendant's room. This court believes it was not only her right, but duty to do so. Once having entered and discovering the presence in the premises under her general control, substances which she had reason to believe were being stored there in violation of law, her bringing such information to the attention of the police department was not in violation of or a waiver of defendant's constitutional rights under the Fourth Amendment.

Ohio, just as many other states, requires physicians to

report gun-shot wounds coming to their attention to the police department. Would the physician have to await issuance of a search warrant before X-raying or probing for the bullet or in the alternative permit, for example, a bank robber to go free after it was discovered that the bullet was later identified positively as having been fired from the bank guard's gun?

Cases involving the Fourth Amendment are usually difficult to decide since it seems almost an impossibility to establish an interpretation which will suit every occasion. As a result courts are compelled to express their opinions on the subject case by case.

In this case, therefore, it is the holding of this court that where by the use of the ordinary senses of smell, hearing or sight, an individual believes that reasonable cause exists to enter private premises for the purpose of averting personal injury to the occupants or damage to property, discovery of criminal acts or presence of contraband may be the subject of prosecution and such discovery is not violative of the Fourth Amendment for lack of a search warrant.

The court furthermore reasserts its position in the *Conley case* cited above that the Fourth Amendment is not applicable as a restriction on search and seizure executed by an individual acting independently and without direction or in concert with any governmental authority, subject only to that individual's liability criminally as well as civilly with respect to acts of trespass, malicious prosecution, false arrest and other remedies at law.

The motion to suppress the evidence is overruled.

*Motion overruled.*